A04A2101, A04A2102. STATE v. ADAMS; and vice versa.
(609 SE2d 378)

RUFFIN, Presiding Judge.

Ronald Jason Adams was charged with driving under the influence of alcohol.[1] Adams moved to suppress the results of the State-administered breath test. He also sought to suppress statements that he made to the arresting officer. Following a hearing, the trial court

---

[1] Adams also was charged with operating a vehicle that was not properly equipped with two functioning taillights.

granted Adams' motion with respect to the breath test, but denied the motion to suppress his statements. In Case No. A04A2101, the State appeals, and in Case No. A04A2102, Adams appeals. As both cases involve the same operative facts, we have consolidated them on appeal. For reasons that follow, we affirm.

When reviewing a trial court's ruling on a motion to suppress, we construe the facts in a light most favorable to the trial court's findings and judgment.[2] Viewed in this manner, the record shows that while working the night shift on December 14, 2003, Hall County Sheriff's Deputy Dave Miller saw Adams driving a truck without functioning taillights. Miller pulled the truck over, and Adams exited. Miller immediately noticed a strong odor of alcohol emanating from the truck, and he asked Adams to perform field sobriety tests, including the horizontal gaze nystagmus test.

After the tests indicated that Adams was impaired, Miller placed Adams under arrest, read him the implied consent warning, and asked him, "[w]ill you submit to the state-administered chemical test of your . . . breath under the implied consent law?" According to Miller, Adams "wasn't sure how to answer the question." Miller testified:

> I told him it was simply a yes or no question. There again, he bounced back. He didn't know what to say, and I said . . . it's either you take the test or you don't. It's up to you. I can't influence it one way or another. I said I can't explain implied consent. If you don't under[stand,] I will read it again for you. He declined the second reading, [but] still didn't give me an answer. We're in a rain that's bordering [on] sleet. So I just simply escorted him to my patrol car and said let me get your truck taken care of . . . and then I'll give you time to think over what's going on, and then I'll ask you again.

Miller took Adams to the Hall County detention center where Adams submitted to the test. Miller did not read Adams his implied consent rights a second time, nor did he explicitly ask for Adams' consent. Rather, Miller simply offered Adams a chance to take the test, and Adams complied. According to Adams, Miller took him from a holding cell, put him in front of the machine, and told him to blow into it. Adams testified that he blew into the machine "[b]ecause I thought I had to."

Adams moved to suppress evidence of the breath test, arguing that his failure to respond to Miller's request for a breath sample was tantamount to a refusal. The trial court agreed and, based upon the

---

[2] See *Oliver v. State*, 268 Ga. App. 290, 291 (601 SE2d 774) (2004).

recent case of *Howell v. State*,[3] suppressed the evidence. The trial court went on to hold that "the State would be given the opportunity to have appropriate jury charges given as to the ramifications of [Adams'] refusal [to submit to testing]."

### Case No. A04A2101

1. On appeal, the State contends that the trial court's reliance upon *Howell* is misplaced. We disagree.

In that case, the arresting officer read Howell his implied consent rights and asked him to submit to a breath test. Although Howell refused, the officer took Howell to the police station, placed him in front of the Intoxilyzer machine, and told him to blow into the machine. Howell complied. On appeal, this Court held that such procedure was unfair and that the arresting officer's conduct was not reasonable.[4] We reach the same result here.

The only difference between this case and *Howell* is that Adams did not unequivocally refuse to submit to breath testing. Rather, he indicated that he was confused and failed to consent. However, such failure is tantamount to a refusal.[5] Moreover, after Adams failed to answer, Miller said that he would take him to the station and ask him again. Thus, Adams had reason to believe that Miller would actually ask him again if he was willing to take the test rather than simply putting him in front of the machine and telling him to blow. Under these circumstances, we cannot construe Adams' compliance as consent.[6] It follows that the trial court did not err in granting Adams' motion to suppress on this basis.

### Case No. A04A2102

2. While en route to the jail, Adams told Miller that he was having marital problems, had joined Alcoholics Anonymous, and had just attended his second meeting. According to Miller, he did not ask Adams any questions to elicit this information. Adams moved to suppress the statements, asserting that they are irrelevant and highly prejudicial. The trial court found the statements admissible, which frames the issue in this appeal.

The decision to admit or exclude evidence lies within the discretion of the trial judge, and this Court will not interfere with such

---

[3] 266 Ga. App. 480 (597 SE2d 546) (2004).
[4] See id. at 482 (1) (a).
[5] See *Miles v. State*, 236 Ga. App. 632, 633 (1) (513 SE2d 39) (1999) (where defendant fails to respond to implied consent request, silence is tantamount to refusal).
[6] See *Howell*, supra.

discretion absent abuse.[7] "Unless the potential for prejudice substantially outweighs probative value, Georgia law favors the admission of relevant evidence, no matter how slight its probative value."[8] "Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue."[9] Moreover, the facts and circumstances surrounding an arrest are generally admissible.[10]

Here, Adams' statement that he had joined Alcoholics Anonymous arguably is relevant to his use of alcohol. Similarly, his statement that he was experiencing marital problems could provide a motive for imbibing. Under these circumstances, we cannot say that the trial court abused its discretion in admitting this evidence.

3. On appeal, Adams also challenges the trial court's decision to give jury instructions regarding his refusal to submit to breath testing. As the trial has not yet taken place, however, no error has occurred. The purpose of this Court is to correct actual error.[11] We do not provide advisory opinions as to potential error.[12] There are myriad reasons why the jury instruction issue may never require resolution, including the possibility either that the trial court may forgo such instruction or that Adams may be acquitted. Accordingly, we decline to address the alleged error at this juncture.[13]

*Judgments affirmed. Eldridge and Adams, JJ., concur.*

DECIDED DECEMBER 13, 2004.

*Jerry Rylee, Solicitor-General, Larry A. Baldwin II, Francis J. Moran III, Assistant Solicitors-General,* for appellant.
*Alan Mullinax, Robert L. Waller III,* for appellee.

---

[7] See *Ginn v. State,* 251 Ga. App. 159 (1) (553 SE2d 839) (2001).
[8] *Anderson v. State,* 238 Ga. App. 866, 874-875 (6) (519 SE2d 463) (1999).
[9] (Punctuation omitted.) *Ritter v. State,* 272 Ga. 551, 554 (3) (532 SE2d 692) (2000).
[10] See *Moore v. State,* 242 Ga. App. 208, 211 (3) (529 SE2d 210) (2000); *Fuqua v. State,* 183 Ga. App. 414, 419-420 (1) (c) (359 SE2d 165) (1987).
[11] See *Merrill v. Eiberger,* 198 Ga. App. 806 (403 SE2d 91) (1991).
[12] See id.; *Height v. State,* 278 Ga. 592, 596 (2) (604 SE2d 796) (2004).
[13] See id.